**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 16, 2021**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

MURTAZA ALI,

     Plaintiff - Appellant,

v.

TRAVIS LAMBERT, Det. Officer,
Tulsa County Jail; GARY KAISER,
Sgt., Tulsa County Jail,

     Defendants - Appellees.

No. 20-5084
(D.C. No. 4:16-CV-00027-CVE-FHM)
(N.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HOLMES**, **MATHESON**, and **McHUGH**, Circuit Judges.
_____

After filing this civil rights case pro se, Murtaza Ali was removed from the

United States because of his criminal record. The case progressed with Mr. Ali

living abroad. But as trial approached, it became increasingly unclear whether

Mr. Ali would be able to attend. The district court found a substantial likelihood that

Mr. Ali's immigration status would prevent him from reentering the country and,

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

thus, from attending trial. It also found that his testimony would be too important to allow him to participate in the trial remotely through videoconferencing. After giving Mr. Ali a chance to obtain permission to reapply for admission to the United States, the court dismissed the case with prejudice for failure to prosecute. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I. BACKGROUND

Mr. Ali is a citizen of India. In 2003, long before this case, he received a 25-year prison sentence after pleading guilty in an Oklahoma court to accessory after the fact to first-degree murder. *See* Okla. Stat. tit. 21, § 173. In 2005, he received an 11-month prison sentence after pleading guilty in federal court to conspiracy to possess a chemical that may be used to manufacture a controlled substance. *See* 21 U.S.C. §§ 843(a)(6), 846.

Mr. Ali filed this case in 2016, alleging the defendants violated his constitutional rights while he was detained at the Tulsa County Jail. He filed the case from a detention center in Texas, where he was held by United States Immigration and Customs Enforcement. Around April 1, 2017, he was removed to India, and he soon settled in the United Arab Emirates. But his location did not become clear to the court for more than two years because, after his removal, he updated his address with the court four times, each time listing an address in Texas.

Meanwhile, the case moved forward. The district court dismissed the claims, and Mr. Ali appealed. Although we affirmed the dismissal of some claims, we

2

concluded that Mr. Ali's excessive-force claims against two defendants should not have been dismissed.  *Ali v. Duboise*, 763 F. App'x 645, 650–52 (10th Cir. 2019).

The case resumed in the district court in March 2019.  In May 2019, Mr. Ali mentioned in a footnote that he was living in the United Arab Emirates and, nearly two months later, updated the court with his address there.  In a December 2019 hearing conducted by telephone, Mr. Ali opined that he could obtain a visa by showing embassy officials that he needed to enter the United States to attend trial. And in his January 2020 deposition, he explained that an immigration attorney told him that his convictions would prevent him from obtaining a visa, but that an embassy would "more than likely" issue him a temporary visa if the court filed "an order requesting [his] presence in the court for a trial."  ROA, Vol. 2 at 264.  At that point, however, he had neither applied for a visa nor requested an order requiring his presence at trial, even though the case had been reset for trial several times since our remand.

In March 2020, roughly six weeks before the scheduled trial, Mr. Ali moved to participate in the trial by videoconference.  He said that he lived in the United Arab Emirates and argued in part that "logistical concerns" and reduction of litigation costs created a compelling circumstance justifying his appearance by videoconferencing, *id.* at 193.  The court denied the motion.  It found that Mr. Ali's residing abroad did not support his request, even if travelling to Oklahoma would create inconvenience or increased costs for him.  It further found that Mr. Ali did not promptly raise his concerns, as the case had been pending in the district court for

3

more than a year after our remand and the current trial date had been set for roughly three months. And recognizing that the excessive-force claims would require the jury to assess Mr. Ali's credibility, the court found that his testimony would be too important to allow him to appear by videoconferencing.

Mr. Ali soon asked the court to reconsider allowing him to appear at trial by videoconference, citing the recent spread of COVID-19 and resulting travel restrictions. He told the court that his local American embassy had stopped issuing visas until further notice. He admitted that he "would not be issued a visit visa to the United States as he was deported due to his prior convictions." Suppl. ROA at 5–6. The court denied the request because it had recently continued the trial and, as Mr. Ali acknowledged, his immigration status created an obstacle to his reentering the country independent of COVID-19.

The defendants moved to dismiss for failure to prosecute, arguing that Mr. Ali had not tried to enter the United States to prosecute the case and that, in any event, his immigration status would likely prevent him from doing so. Mr. Ali responded that he tried to apply for a visa in April 2020 but learned from the local embassy's website that, because of COVID-19, it would not be issuing visas until further notice. He also unsuccessfully moved for an order requiring his physical presence at trial.

The district court agreed with the defendants that the case should be dismissed if Mr. Ali could not appear at trial. And it gave Mr. Ali additional time to obtain permission to reapply for admission to the United States, warning that it would dismiss the case if Mr. Ali could not obtain that permission. The court set a deadline,

4

eleven days before trial, for Mr. Ali to obtain permission to reapply for admission to the country. He did not meet the deadline, and the court dismissed the case with prejudice.

## II. DISCUSSION

Continuing to proceed pro se, Mr. Ali appeals the denial of his motion to participate in trial remotely and the dismissal of the case for failure to prosecute.[1] We review both of those rulings for an abuse of discretion. *Eller v. Trans Union, LLC*, 739 F.3d 467, 477 (10th Cir. 2013) (remote testimony); *Ecclesiastes 9:10-11-12, Inc. v. LMC Holding Co.*, 497 F.3d 1135, 1143 (10th Cir. 2007) (dismissal for failure to prosecute). An abuse of discretion occurs when a district court "exceeds the bounds of permissible choice," or when it relies on either an erroneous legal conclusion or a clearly erroneous factual finding. *Ecclesiastes*, 497 F.3d at 1143 (brackets and quotations omitted). The district court did not abuse its discretion in this case.

### A. *Appearing at Trial by Videoconferencing*

"The opportunity to judge the demeanor of a witness face-to-face is accorded great value in our tradition." Fed. R. Civ. P. 43(a) advisory committee's note to 1996 amendment. Even so, "[f]or good cause in compelling circumstances and with appropriate safeguards, the court may permit testimony in open court by contemporaneous transmission from a different location." Fed. R. Civ. P. 43(a).

---

[1] Because Mr. Ali represents himself, we construe his filings liberally. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

"The most persuasive showings of good cause and compelling circumstances are likely to arise when a witness is unable to attend trial for unexpected reasons." Fed. R. Civ. P. 43(a) advisory committee's note to 1996 amendment. "A party who could reasonably foresee the circumstances offered to justify transmission of testimony will have special difficulty in showing good cause and the compelling nature of the circumstances." *Id.* "Notice of a desire to transmit testimony from a different location should be given as soon as the reasons are known . . . ." *Id.*

Mr. Ali argues that COVID-19 restrictions created compelling circumstances, so the "district court could have" allowed him to appear at trial through videoconferencing. Aplt. Br. at 19 (capitalization and bold type omitted). But we do not ask whether the court *could have* ruled differently than it did; we ask whether the court's ruling falls within the range of permissible options. *See Ecclesiastes*, 497 F.3d at 1143. And Mr. Ali does not dispute the district court's finding that his testimony would have been too important to allow him to appear remotely, or its finding that he did not promptly request to appear remotely. Those findings place the court's ruling firmly within the range of permissible options.

Mr. Ali's remaining arguments do not undermine the district court's ruling. His discussion of authority addressing prisoners appearing remotely is unpersuasive because he would not have been in custody when trial occurred. We will assume without deciding that, as he argues, videoconferencing is easier to justify in civil trials than in criminal trials. And we do not dispute his claim that videoconferencing can reduce litigation costs. In the end, though, neither the civil nature of this case

6

nor the potential to reduce litigation costs required the district court to allow him to appear at trial by videoconferencing.

## B. *Dismissal for Failure to Prosecute*

If the plaintiff fails to prosecute, a defendant may move to dismiss. Fed. R. Civ. P. 41(b). But "dismissal with prejudice for failure to prosecute is a severe sanction, a measure of last resort." *Ecclesiastes*, 497 F.3d at 1143 (quotations omitted). Before dismissing a case with prejudice for failure to prosecute, a court should ordinarily consider at least "(1) the degree of actual prejudice to the other party; (2) the amount of interference with the judicial process; (3) the litigant's culpability; (4) whether the court warned the party in advance that dismissal would be a likely sanction for noncompliance; and (5) the efficacy of lesser sanctions." *Id.* Dismissal is appropriate "when the aggravating factors outweigh the judicial system's strong predisposition to resolve cases on their merits." *Id.* at 1144 (quotations omitted).

The district court's decision to dismiss flowed from its findings that Mr. Ali initially misled the court about his 2017 removal from the United States; there was a substantial likelihood that Mr. Ali's immigration status would prevent his appearance at trial; and he had only recently tried to reapply for admission to the United States after it became clear that pandemic restrictions would prevent him from obtaining a visa. Based on these findings, the court concluded that four factors heavily favored dismissal: Mr. Ali's conduct prejudiced the defendants; his conduct interfered with the judicial process; he was culpable for his removal from the country based on his

criminal convictions, for misrepresentations about his address, and for his belated attempt to obtain a visa; and the court lacked adequate options short of dismissal. The court found that two factors weighed against immediate dismissal: it had not yet warned Mr. Ali that the case might be dismissed if he could not appear at trial, and he may not have understood that he needed consent from the Attorney General to reapply for admission to the country. Rather than dismiss at this point, the court gave Mr. Ali a chance to obtain permission to reapply for admission.

Mr. Ali primarily argues that the district court should not have dismissed his case because the COVID-19 pandemic disrupted court proceedings and international travel. This argument ignores the court's finding—which Mr. Ali does not appear to dispute—that his immigration status created a substantial likelihood that he would not be able to appear in person for trial. His conviction under §§ 843(a)(6) and 846 is an aggravated felony for immigration purposes. *See Carachuri-Rosendo v. Holder*, 560 U.S. 563, 567 (2010) (explaining that aggravated felonies under the Immigration and Nationality Act include any felony punishable under the Controlled Substances Act, 21 U.S.C. §§ 801–904). Quite apart from any pandemic restrictions, then, he will remain inadmissible to the United States for 20 years from the date of his removal unless the Attorney General consents to his reapplying for admission sooner. *See* 8 U.S.C. § 1182(a)(9)(A). Yet he failed even to request the Attorney General's consent until after the district court threatened to dismiss this case. And to the extent he believed he could obtain a visa if the court entered an order requiring his presence

8

at trial, he failed to request such an order until trial had been reset several times and the defendants had moved to dismiss.

Mr. Ali's discussion of the five factors underlying the court's ruling does not show the court abused its discretion. First, he asserts that the defendants failed to show prejudice, but he does not explain why they would not suffer prejudice if they had to continue to defend against his claims with no foreseeable end to the litigation. Second, he denies interfering with the judicial process, but the record supports the finding that he initially misled the court about his removal. Third, he denies culpability, but the record supports the findings that he is to blame for his removal based on criminal convictions, for his initial misrepresentations about his address, and for waiting so long before trying to obtain a visa. Fourth, he says the court dismissed the case without warning, but the court expressly warned him of the impending dismissal and gave him a chance to avoid it. And fifth, he argues that the court could have employed less drastic measures—continuing trial or allowing him to appear by videoconference—but continuing trial would not have changed his immigration status, and, as we explained above, the court acted within its discretion when it refused to allow him to appear at trial through videoconferencing.

## III. CONCLUSION

We affirm the district court's judgment.

Entered for the Court

Scott M. Matheson, Jr.
Circuit Judge

9