**E. H. PATTERSON, Appellant,**

v.

**C. I. T. CORPORATION, Appellee.**

**No. 7944.**

United States Court of Appeals
Tenth Circuit.

Sept. 21, 1965.

Rehearing Denied Dec. 6, 1965.

Quincy D. Adams, of Adams & Pongetti, Albuquerque, N. M., for appellant.

William E. Bondurant, Jr., of Hinkle, Bondurant & Christy, Roswell, N. M. (Harold L. Hensley, Jr., and Michael R. Waller, Roswell, N. M., with him on the brief), for appellee.

Before PICKETT and SETH, Circuit Judges, and DOYLE, District Judge.

PICKETT, Circuit Judge.

The question presented by this appeal is whether the District Court erred in entering a default judgment against the defendant Patterson for $204,579.52, because of the failure to respond to a notice of taking his deposition, pursuant to a notice served only upon his attorney of record.[1] We agree with Patterson's contention that the record does not disclose that Patterson's failure to appear at the time and place designated in the notice for the taking of his deposition was willful.

The plaintiff, C. I. T. Corporation, sought to recover from Patterson the sum of $148,050.00, with interest and attorney fees, alleged to be due on a conditional sales contract. In his answer, Patterson denied that he had signed the instrument and alleged that the signature attached thereto was a forgery. There was considerable difficulty in getting the case at issue, caused principally by Patterson's inattention to the case and his frequent change of counsel. The complaint was filed on February 28, 1963, and on May 17, 1963 a default judgment was entered when Patterson did not appear and answer. The default judgment was set aside and an answer filed on January 10, 1964, by Patterson's attorney, Everett Grantham of Albuquerque, New Mexico. Grantham wrote Patterson on April 20, 1964 advising him that the case was set for trial on May 18, Sometime after Patterson received the

---

1. Rule 37(d), F.R.Civ.P., provides in part: "If a party or an officer or managing agent of a party wilfully fails to appear before the officer who is to take his deposition, after being served with a proper notice, * * * the court on motion and notice may strike out all or any part of any pleading of that party, or dismiss the action or proceeding or any part thereof, or enter a judgment by default against that party."

notice that the case was set for trial, he talked to Grantham about the case and advised him that he was going to Pecos, Texas, to confer with an attorney, whose deposition he thought would be necessary for the trial. The notice to take Patterson's deposition on May 8 was served on his attorney on May 4. The attorney attempted to locate Patterson but was unable to do so, consequently Patterson did not appear for the taking of his deposition. On May 11, 1964, C. I. T. presented a motion for default judgment,[2] which was granted on May 12. Patterson testified that he was in Texas for the purpose of interviewing witnesses and made numerous unsuccessful attempts to get in touch with Grantham.[3]

2. When the motion for default was heard, Grantham, referring to his attempt to locate Patterson, stated to the court:

"Mr. Patterson, the defendant in this case, lives in Kansas City. It is the only address I have for him. I wrote him on April 16, which was before the notice for the taking of his deposition, advising that the plaintiff was to seek an early setting of the case for trial on its merits and because I had been so advised by the attorneys for the plaintiff.

Later on—not much later on, because it was on April 20—I wrote and advised him that the case had been set for trial on the merits on May 18, 1964, and I want to quote this:

'It is imperative that I confer with you and make plans for the trial. I will be in my office for the balance of this week and all of next week and would suggest that you call me immediately upon receipt of this letter, in order that we may set a definite date.' That is part of what I wrote to him.

Shortly after that, but before receiving the notice of the deposition, which was on May 4th, Mr. Patterson called me by long distance and, incidentally, I have had extreme difficulty throughout the entire course of this case in getting in communication with him, because I can never locate him. He called me and advised me that he was going to Pecos, Texas, to confer with an attorney down there, whose deposition we would probably want to take, and that he would call me from the attorney's office in Pecos.

Since that date I have not been able to communicate with him. I have endeavored to reach him in Kansas City. He is on the road a good bit of the time.

However, in view of the fact that this case is set for trial on the merits for next Monday, it may be that this motion is a little premature and maybe it is not wilful. It certainly is dilatory—I'll admit that much—because I have been unable to stay in communication with my client, but it is a case that involves a very, very considerable amount of money, ant [sic] it seems to me that the motion may be slightly in advance of the time it should be heard and considered."

3. Patterson testified as follows:

"Q. All right, from the 28th of April then, when you last talked to Mr. Grantham, where did you go and what were you doing?— A. I told him if that trial was going to be on the 18th, that we had to have the depositions out of Pecos, airplane pilot, two lawyers, Mr. Foster, and I had to go down there and spend a week or so, which I did. I went to Midland, Odessa, and Pecos. I asked an attorney, Mr. Leagh, to call Mr. Grantham on Friday. Let's see, Friday was what date? They were supposed to have that hearing up here on Friday, which I didn't know about. He says, 'You have Mr. Grantham to call me on Monday at my office.' I was out at his house Friday night. I said, 'Well, Mr. Grantham told me to have you call him while I was present.' He said, 'Well, I would a little rather he would call me Monday at my office.'

Q. Who is this you are talking about? — A. Attorney Leagh. He spells his name L-e-a-g-h.

Q. Where is he located?—A. Pecos, Texas.

Q. You asked him to call Mr. Grantham? — A. On Friday night about eight o'clock.

Q. That was the 8th of May, you say?— A. Yes, sir.

Q. All right, Now, did you, in fact, receive any message from Mr. Grantham during the period from April 28th, 1964, up until May 11th 1964?— A. No. I had no letter or no telephone call. However, he said he tried to call me in Kansas City, but— * * * *"

* * * * *

"Q. You mean that he told you that the judgment had been entered the day before?— A. Yeah, the judgment had been entered, he said on yesterday, the 12th, which was Tuesday.

Q. All right. Now, during this period from the 30th of April to the 11th of May, was there any way that Mr. — no

On May 22nd Patterson filed a motion, pro se, in which he sought to have the default judgment set aside. This motion was set for hearing at 8:30 A.M. on July 13, 1964, but Patterson did not appear in the court room until 10 A.M. In the meantime the court denied the motion. Thereafter other attorneys representing Patterson filed a motion to set aside the default judgment, which was heard and denied on July 22, 1964.

 While the District Judges have broad discretion to impose penalties for failure to comply with requirements of the rules, the language of Rule 37(d) is quite clear that the sanctions provided for therein for failure of a party to appear before the officer who is to take his deposition can be applied only when such failure is willful. A willful failure "is any intentional failure as distinguished from involuntary noncompliance. No wrongful intent need be shown." United States v. 3963 Bottles, 7 Cir., 265 F.2d 332, 337. See also United States for Use of Weston & Brooker Co. v. Continental Casualty Co., 4 Cir., 303 F.2d 91; Gill v. Stolow, 2 Cir., 240 F.2d 669; Brookdale Mill, Inc. v. Rowley, 6 Cir., 218 F.2d 728; Barron and Holtzoff, Federal Practice and Procedure, Vol. 2A, § 855; Moore's Federal Practice, Vol. 4, ¶ 3704; Societe Internationale etc. v. Rogers, 357 U.S. 197, 78 S.Ct. 1087, 2 L.Ed.2d 1255.

 During the pendency of this action the plaintiff had not attempted to obtain Patterson's deposition until immediately prior to the date the case was set for trial, and then on a very short notice. Service was made upon his attorney as permitted by the Rules. (Rule 5(b), F.R.Civ.P.) But no contention is made that Patterson knew of this service or that C. I. T. was desirous of obtaining his deposition prior to the trial. It is true that Patterson should have been more attentive to his case throughout its pendency, but it cannot be inferred from his conduct that he intentionally failed to keep in touch with his attorney for the purpose of avoiding the taking of his deposition. We do not hold that dilatory tactics and callous inattention to pending litigation may not, in a proper case, amount to wilfullness, but in this case, regardless of his prior unsatisfactory conduct in regard to the litigation, the record does not indicate that Patterson had any reason to believe that C. I. T. intended to take his deposition at the time designated in the notice.

The judgment is reversed and the case remanded for further proceedings.

let me withdraw that question. During the period from the 30th of April to the 11th of May, was there any way in which Mr. Grantham might have reached you by telephone or otherwise during that period?— A. I called on Tuesday, the 5th, to Mr. Perry's office and asked if there had been any calls from Odessa, and he said no, there hadn't been any calls for me.
Q. Just a minute, Mr. Patterson. Do you mean you were in Odessa at that time?— A. Yes, sir.
Q. And you called Mr. Perry?— A. Yes, sir.
Q. And asked if you had had any calls, is that correct?— A. That's right.
Q. All right. Had you previously told Mr. Grantham that you might be reached through Mr. Perry's office?— A. Yes, sir.
Q. Well, would there have been any other way that Mr. Grantham could have reached you during the period from April 30th to May 8th, other than through Mr. Perry's office?— A. He would have had to call some of those numbers. However, I had told him that I was going down to Odessa, Pecos, to talk to some people that we had to get depositions from before we went to trial. I says—
Q. Was that your sole business, preparing for this trial?—A. Yes, sir, because we only had a very few days there.
Q. Where was your wife during this perios? [sic]—A. She was with me.
Q. I see. All right, now, Mr. Patterson, if you had known about this deposition being set for the 8th of May, was there any reason why you wouldn't have appeared for the taking of your deposition?—A. No, sir, not in the least. I would have been glad to give my deposition if I would have knew about it."