**PUBLISH**

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**May 3, 2011**

**TENTH CIRCUIT**

**Elisabeth A. Shumaker**
**Clerk of Court**

| | |
|---|---|
| MARKYL LEE, a/k/a Markyl Angel Lee; PROMISES TO KEEP, LLC, a Florida limited liability company, <br><br>    Plaintiffs-Appellants, <br>v. <br><br> MAX INTERNATIONAL, LLC, a Utah limited liability company, <br><br>    Defendant-Appellee. | No. 10-4129 |

**Appeal from the United States District Court**
**for the District of Utah**
**(D.C. No. 2:09-CV-00175-DB)**

Stuart Miller, Laguna Hills, California, for Plaintiffs-Appellants.

James T. Blanch (Erik A. Christiansen and Katherine E. Venti, with him on the brief), Parsons, Behle & Latimer, Salt Lake City, Utah, for Defendant-Appellee.

Before **MURPHY, HARTZ,** and **GORSUCH**, Circuit Judges.

**GORSUCH**, Circuit Judge.

How many times can a litigant ignore his discovery obligations before his misconduct catches up with him? The plaintiffs in this case failed to produce documents in response to a discovery request. Then they proceeded to violate not

one but two judicial orders compelling production of the requested materials. After patiently affording the plaintiffs chance after chance, the district court eventually found the intransigence intolerable and dismissed the case as sanction. We affirm. Our justice system has a strong preference for resolving cases on their merits whenever possible, but no one, we hold, should count on more than three chances to make good a discovery obligation.

The case started ordinarily enough. In February 2009, Markyl Lee and his wholly owned company, PTK, filed a complaint alleging that Max International had breached a contract with them. In the usual course discovery followed and Max propounded various document requests. Unsatisfied with the plaintiffs' production, Max filed a motion to compel.

So far, a little off track but nothing out of the ordinary. Soon, however, things got worse. In October 2009, a magistrate judge granted Max's motion and ordered production of a variety of documents. Despite the order, only a trickle of material followed. Plaintiffs still failed to turn over many items Max had requested and the court had ordered produced.

This led Max to file a motion for sanctions seeking dismissal of the case. As happens in these things, much motions practice followed. Eventually, the magistrate judge in January 2010 confirmed that the plaintiffs had "blatant[ly]" and without apparent excuse flouted the October 2009 order. Aplt. App. at 398. Even so, the magistrate stopped short of granting Max's request for dismissal.

Instead, the court chose to give the plaintiffs one more chance to produce the requested documents. At the same time, the magistrate warned plaintiffs that "continued non-compliance will result in the harshest of sanctions." *Id.* The magistrate gave plaintiffs until February 26, 2010 to produce the requested — and now twice compelled — discovery.

On January 25, 2010, the plaintiffs filed with the court a declaration certifying that they had now produced *all* the requested documents. But once again Max couldn't find all of the requested documents. So the very next day Max sent a letter claiming that various materials still remained missing. Receiving no reply to its letter, on February 3 Max renewed its motion for sanctions. Two days after Max filed its motion, plaintiffs produced some of the missing records. Later in the month, the plaintiffs sent along yet more discovery materials.

When the magistrate heard arguments on Max's renewed motion for sanctions, she was not well pleased. She issued a report and recommendation to the district court judge finding that the plaintiffs had violated not only her October 2009 but also her January 2010 order — and that the plaintiffs violated the latter order despite having been expressly warned that any further problems could result in dismissal. Pursuant to Rule 37 of the Federal Rules of Civil Procedure, the magistrate recommended to the district court that it grant Max's

motion and dismiss the case as sanction for plaintiffs' misconduct. In June 2010, the district court did just that, and it is from this order the plaintiffs now appeal.

We view challenges to a district court's discovery sanctions order with a gimlet eye. We have said that district courts enjoy "very broad discretion to use sanctions where necessary to insure . . . that lawyers and parties . . . fulfill their high duty to insure the expeditious and sound management of the preparation of cases for trial." *In re Baker*, 744 F.2d 1438, 1440 (10th Cir. 1984) (en banc); *see also Patterson v. C.I.T. Corp.*, 352 F.2d 333, 336 (10th Cir. 1965). The Supreme Court has echoed this message, admonishing courts of appeals to beware the "natural tendency" of reviewing courts, far from the fray, to draw from fresh springs of patience and forgiveness, and instead to remember that it is the district court judge who must administer (and endure) the discovery process. *See Nat'l Hockey League v. Metropolitan Hockey Club*, 427 U.S. 639, 642 (1976). Commentators, too, have advised us to remember that "the district courts must have latitude to use severe sanctions for purposes of general deterrence." *See* Charles Alan Wright, Arthur R. Miller, Mary Kay Kane & Richard L. Marcus, Federal Practice & Procedure § 2284, at 444.

No doubt district judges enjoy such special discretion in this arena because of the comparative advantages they possess. In the criminal sentencing context, the district court receives special deference because it has a better vantage than we to assess the defendant, the crime, the credibility of all involved. And in some

sense discovery disputes are analogous. The district court's active participation in the discovery motions practice affords it a superior position than we — with but a cold record to review — for deciding what sanction best fits the discovery "crime," both as a matter of justice in the individual case and "to deter [others] who might be tempted to [similar] conduct." *Nat'l Hockey League*, 427 U.S. at 643. Discovery disputes are, for better or worse, the daily bread of magistrate and district judges in the age of the disappearing trial. Our district court colleagues live and breathe these problems; they have a strong situation sense about what is and isn't acceptable conduct; by contrast, we encounter these issues rarely and then only from a distance. *See Regan-Touhy v. Walgreen Co.*, 526 F.3d 641, 647 (10th Cir. 2008).

We hold that the district court's considerable discretion in this arena easily embraces the right to dismiss or enter default judgment in a case under Rule 37(b) when a litigant has disobeyed two orders compelling production of the same discovery materials in its possession, custody, or control. Plaintiffs in this case were given no fewer than three chances to make good their discovery obligation: first in response to Max's document requests, then in response to the October 2009 order, and finally in response to the January 2010 order. Plaintiffs failed at all three turns. And three strikes is more than enough to allow the district court to call a litigant out. Of course, our legal system strongly prefers to decide cases on their merits. Because of this, we have held that a dismissal or default

sanctions order should be predicated on "'willfulness, bad faith, or [some] fault'" rather than just a simple "inability to comply." *Archibeque v. Atchison, Topeka & Santa Fe Ry.*, 70 F.3d 1172, 1174 (10th Cir. 1995) (quoting *Nat'l Hockey League*, 427 U.S. at 640). Likewise, the Federal Rules protect from sanctions those who lack control over the requested materials or who have discarded them as a result of good faith business procedures. *See*, *e.g.*, Fed. R. Civ. P. 37(e) (providing a safe harbor for those who "fail[] to provide electronically stored information lost as a result of the routine, good-faith operation of an electronic information system"). But a party's thrice repeated failure to produce materials that have always been and remain within its control is strong evidence of willfulness and bad faith, and in any event is easily fault enough, we hold, to warrant dismissal or default judgment.

Back in 1937 the drafters of the Federal Rules promised that their project would help ensure "the just, speedy, and inexpensive determination of every action." Fed. R. Civ. P. 1. To date, that promise remains elusive, more aspirational than descriptive. But it is surely the case that if court orders can be repeatedly flouted we will only retreat further from the goal. When a party feels at liberty to disobey not just a discovery request but two court orders compelling production of the same material in its control, weeks or months (as in this case) pass without progress in the litigation. Hours, days, weeks of lawyers' time are consumed at great expense. Focus shifts from the merits to the collateral and

needless.  This is not speedy, inexpensive, or just.  Just the opposite.  And no

doubt tolerating such behavior would encourage only more of it.   But there is

such thing as discovery karma.  Discovery misconduct often may be seen as

tactically advantageous at first.  But just as our good and bad deeds eventually

tend to catch up with us, so do discovery machinations.  Or at least that's what

Rule 37 seeks to ensure.  *See Roadway Express, Inc. v. Piper*, 447 U.S. 752, 763

(1980) ("Rule 37 sanctions must be applied diligently . . . ."); The Sedona

Conference, *The Case for Cooperation*, 10 Sedona Conf. J. 339, 342 (2009); Final

Report on the Joint Project of the American College of Trial Lawyers Task Force

on Discovery & The Institute for the Advancement of the American Legal System

at 2 (Rev. Apr. 15, 2009), *available at*

http://www.du.edu/legalinstitute/publications %20rules.html.

Of course, the plaintiffs urge us that theirs isn't a case warranting

dismissal.

First, they note, the district court's dismissal order was expressly

predicated on a finding that they violated two orders — and this, they say, they

simply didn't do.  To be more exact, the plaintiffs don't question that they failed

to comply with the October 2009 order — and they admit that they don't "have a

good explanation" for this misconduct.  Aplt. App. at 649.  Instead, they argue

only that they *did* comply with the magistrate's January 2010 order, and that the

district court's factual finding otherwise is clearly wrong.  *See Watson v. United*

*States*, 485 F.3d 1100, 1108 (10th Cir. 2007) (explaining that "a [factual] finding must be more than possibly or even probably wrong; the error must be pellucid to any objective observer"). Because the district court rested its decision to dismiss their case on a factually faulty premise, they say, it should be reversed.

But it is the plaintiffs who are mistaken. For its part, Max claims the plaintiffs violated the January 2010 order in many ways. In reply, plaintiffs vigorously dispute Max's representations on each and every score. For our purposes, however, we don't need to wade too deeply into this heap of dispute upon dispute. To sustain the district court's factual finding that plaintiffs violated the January 2010 order against a challenge that it is clearly erroneous, it is enough for us to identify one violation. And one violation of the January 2010 order surely concerns Mr. Lee's tax returns. Max sought these documents in its May 2009 document requests, but plaintiffs failed to provide them. The court ordered the tax returns produced in October 2009, but still plaintiffs failed to yield. In January 2010, the court once again ordered the tax records produced. Responding to this latest order, on January 25 the plaintiffs filed with the court a declaration under the penalty of perjury certifying that they had produced all of the tax records. As it happened, they had not. Even the plaintiffs themselves now don't dispute this much. Neither does anyone dispute that the records were relevant to the case, the request for them reasonably tailored, and that the documents were always within the plaintiffs' control.

Instead, the plaintiffs shift ground. They try to convince us that their false declaration shouldn't matter. The magistrate gave them, they note, until February 26 to comply with the January 2010 order. And though their January 25 production was incomplete and their declaration of compliance false, they eventually produced the requested tax records by February 26. And all's well that ends well, they say.

We disagree. Once the plaintiffs chose to declare — under penalty of perjury, no less — that their production of tax records was now compliant with the January 2010 order, the game was up. The court and defendants were entitled to take that sworn declaration to the bank, to rely upon it, to consider the matter closed. Yet, the plaintiffs produced the tax records only *after* Max uncovered the falsity of the declaration and only *after* Max was forced to file yet *another* motion concerning their production. None of this should've been necessary. And none of this, in any reasonable sense, demonstrates "compliance" with the January 2010 order. Discovery is not supposed to be a shell game, where the hidden ball is moved round and round and only revealed after so many false guesses are made and so much money is squandered. Perhaps the district court could've exercised its discretion to allow the case to proceed despite the false declaration and the plaintiffs' repeated noncompliance. But it certainly did not err in finding that its January 2010 order was violated. *See Garcia v. Berkshire Life Ins. Co.*, 569 F.3d 1174, 1180 (10th Cir. 2009) (to say a false declaration is neither here nor there

"would render the sanctity of the oath quite meaningless" (internal quotation omitted)).[1]

Second, the plaintiffs complain that the district court failed to explain in sufficient detail the reasons for its dismissal order. We have, the plaintiffs observe, previously suggested various factors a district court may wish to consider when deciding whether to exercise its discretion to issue a dismissal sanction: "(1) the degree of actual prejudice to the defendant; (2) the amount of interference with the judicial process; (3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for non-compliance; and (5) the efficacy of lesser sanctions." *Ehrenhaus v. Reynolds*, 965 F.2d 916, 921 (10th Cir. 1992) (internal quotations omitted). According to the plaintiffs, a district court must always "provide a detailed evaluation" of these *Ehrenhaus* "factors on the record." Aplt. Br. at 26. The district court's failure to do so in this case, they say, requires us to reverse.

Again the plaintiffs are in error. In *Ehrenhaus* we expressly stated the factors "do not represent a rigid test" that a district court must always apply. 965 F.2d at 921. The *Ehrenhaus* factors are simply a non-exclusive list of sometimes-

---

[1] Because plaintiffs' declaration was offered on behalf of both Mr. Lee and PTK, and because the plaintiffs themselves have consistently urged the courts to treat them as "one and the same" for all purposes in this case, we have no difficulty treating the plaintiffs as one in our legal analysis here, as the district court did. Aplt. App. at 14-15.

helpful "criteria" or guide posts the district court may wish to "consider" in the exercise of what must always remain a discretionary function. *Id.* Accordingly, we have repeatedly explained that we will uphold a district court's sanctions order of dismissal or default — despite the "fact that . . . the court [has] not evaluate[d]" the *Ehrenhaus* factors, and despite the fact that not all the factors are satisfied in a particular case — so long as our independent review of the record confirms that the district court didn't abuse its discretion. *Archibeque*, 70 F.3d at 1174-75; *see also Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1162 (10th Cir. 2007) (holding that we may "affirm a district court's dismissal based on our own independent assessment of its legal propriety" even if the district court failed to discuss the *Ehrenhaus* factors); *Richison v. Ernest Group, Inc.*, 634 F.3d 1123, 1130 (10th Cir. 2011) (noting that district courts generally may be affirmed "on any basis supported by the record"); *Anaeme v. FHP of New Mexico, Inc.*, No. 99-2076, 1999 WL 1101756 at *2 (10th Cir. Dec. 3, 1999) (unpublished) (finding no abuse of discretion despite district court's failure to mention *Ehrenhaus* factors); *Rocky Mountain Tech. Eng'g Co. v. Hutchens Indus., Inc.*, 263 F. App'x 895, 898 (10th Cir. 2008) (unpublished) (same).[2]

---

[2] The plaintiffs suggest that *Procter & Gamble Co. v. Haugen,* 427 F.3d 727 (10th Cir. 2005) is inconsistent with these precedents. It is not. In *Procter & Gamble* we said simply that a district court "should ordinarily" evaluate the *Ehrenhaus* factors, and we reversed the district court's dismissal order because "*not only* did the district court fail to consider the *Ehrenhaus* factors," but, dispositively, "*our own independent review* suggest[ed]" that "the extreme

(continued...)

- 11 -

The dispositive question on appeal thus isn't whether the district court's order could or did touch every *Ehrenhaus* base. Instead, it is and always remains whether we can independently discern an abuse of discretion in the district court's sanctions order based on the record before us. The *Ehrenhaus* factors may sometimes help illuminate that question, just as they sometimes may assist a district court in exercising its discretion. But a district court's failure to mention or afford them extended discussion does not guarantee an automatic reversal. And where, as here, the record shows that a party failed to comply with a document request and two court orders compelling production of materials within the party's control, we are convinced a district court does not abuse its discretion by dismissing the case or entering default as sanction, regardless whether and to what extent the *Ehrenhaus* factors found their way into the court's order.

*Affirmed.*

---

[2](...continued)
sanction of dismissal was clearly inappropriate under the circumstances" and thus constituted an abuse of discretion. *Id.* at 738 (emphasis added). Our independent review in *Procter & Gamble* revealed an abuse of discretion because the plaintiff there (quite unlike the plaintiffs here) lacked control over and thus the ability to produce the requested data. *Id.* In *Procter & Gamble* we also repeated the unremarkable proposition that we may vacate a district court's sanctions order, much as with any other order, for further explanation when the district court record is so cryptic that it makes it "impossible" for us to conduct "our own independent review." *Id.* (citing *Mobley v. McCormick*, 40 F.3d 337, 341 (10th Cir. 1994) (reversing because a "short, three paragraph order" was insufficient to allow this court to "engag[e] in any meaningful review")). But our precedents make quite clear that a district court's failure to consider the *Ehrenhaus* factors doesn't automatically render our independent review impossible.

10-4129 - *Lee v. Max International*

**HARTZ**, Circuit Judge, joined by Judge **MURPHY,** concurring:


I agree that the dismissal with prejudice must be affirmed. Although recital of an analysis of the *Ehrenhaus* factors is not mandatory before a district court dismisses with prejudice because of discovery violations, the court should provide an explanation of the need to dismiss with prejudice. In this case the explanation was inadequate, perhaps because of a justifiable frustration with the conduct of the plaintiffs. Nevertheless, that conduct was sufficiently egregious that I see no point in remanding to the district court to recite the obvious.