**FILED**
**United States Court of Appeals**
**Tenth Circuit**

## UNITED STATES COURT OF APPEALS

### FOR THE TENTH CIRCUIT

**September 1, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

_____

ELLIS-HALL CONSULTANTS, LLC, a
Utah limited liability company;
ANTHONY HALL, an individual,

      Plaintiffs,

v.

GEORGE B. HOFMANN, IV, an
individual; PARSONS KINGHORN
HARRIS n/k/a COHNE KINGHORN,
P.C., a Utah professional corporation;
MATTHEW M. BOLEY, an individual;
KIMBERLEY L. HANSEN, an individual;
GARY E. JUBBER, an individual; and
DAVID R. HAGUE, an individual;
FABIAN & CLENDENIN n/k/a FABIAN
VANCOTT, P.C., a Utah professional
corporation,

      Defendants,

*consolidated with*

In re: RENEWABLE ENERGY
DEVELOPMENT CORPORATION,

      Debtor.

----------------------------------------

ELIZABETH R. LOVERIDGE, Chapter 7
Trustee,

      Plaintiff,

v.

TONY HALL; ELLIS-HALL

Nos. 20-4040, 20-4041, 20-4045
(D.C. No. 2:12-CV-00771-DB)
(D.C. No. 2:15-CV-00913-DB)
(D. Utah)

CONSULTANTS, LLC; SUMMIT WIND POWER, LLC; SSP, A Trust, Scott Rasmussen, Trustee; CLAY R. CHRISTIANSEN, an individual; DIANE E. CHRISTIANSEN, an individual; RICHARD D. FRANCOM, an individual; STEPHEN K. MEYER, an individual; BONNIE G. MEYER, an individual; and DOES I-X,

      Defendants,

and

SUMMIT WIND POWER, LLC; and KIMBERLY CERUTI, an individual,

      Third-Party Plaintiffs –
      Appellants/Cross-Appellees,

v.

PARSONS KINGHORN HARRIS, a professional corporation; GEORGE B. HOFMANN, IV, an individual; MATTHEW BOLEY, an individual; KIMBERLEY L. HANSEN, an individual; VICTOR P. COPELAND, an individual; LISA R. PETERSEN, an individual; and MELYSSA DAVIDSON, an individual,

      Third-Party Defendants –
      Appellees/Cross-Appellants.

_____

**ORDER AND JUDGMENT**[*]

_____

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. But it may be cited for its persuasive value. *See* Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

2

_____

Before **MORITZ**, **EBEL**, and **EID**, Circuit Judges.

_____

After years of intractable litigation, defendants moved to dismiss this case under Federal Rules of Civil Procedure 37 and 41 as a sanction for plaintiffs' conduct during discovery. The district court granted the motion, and plaintiffs now appeal that dismissal order (among other rulings). For the reasons that follow, we affirm.

## Background

This dispute began over a decade ago—in December 2011—when Renewable Energy Development Corporation (REDCO), a company that develops solar- and wind-energy products, filed for Chapter 7 bankruptcy. George Hofmann, an attorney at Parsons Kinghorn Harris (PKH), was appointed as REDCO's trustee. In May 2012, Hofmann filed an adversary proceeding on REDCO's behalf against Summit Wind Power, LLC (SWP) and others. Two months later, SWP and its sole owner, Kimberly Ceruti (together, plaintiffs), brought a third-party complaint asserting various claims against Hofmann, PKH, and other PKH attorneys (collectively, defendants). Broadly, plaintiffs alleged that defendants engaged in malpractice in connection with the REDCO bankruptcy proceedings. Those third-party proceedings—in particular, the discovery process during those proceedings—are now the subject of this appeal.[1]

As the third-party proceedings entered discovery, the parties had a difficult time

_____

[1] Three days after plaintiffs filed their third-party complaint, Hofmann resigned as REDCO trustee. The adversary proceedings eventually settled in 2014.

working cooperatively.[2] In April 2017, a newly assigned district-court judge instructed the parties at a hearing to "[g]et discovery going" and move the case forward. Supp. App. vol. 6, 1713. To that end, the district court encouraged the parties to confer and agree on a scheduling order. The district court also encouraged Ceruti, who has sometimes represented herself in these proceedings, to retain an attorney. After the hearing, defendants circulated a proposed scheduling order to plaintiffs. A month later, having not received a response, defendants requested a hearing so that a scheduling order could be entered. Ceruti twice objected to their request, citing a litany of reasons. Eventually, about nine months after the district court's initial instruction to move the case along, a scheduling order was entered (following a hearing before a magistrate judge).

With the scheduling order in place, defendants served document requests and interrogatories on plaintiffs. Defendants also attempted to schedule depositions with Ceruti—SWP's designated witness under Federal Rule of Civil Procedure Rule 30(b)(6), which governs depositions directed to an organization. Although defendants offered SWP several deposition dates over a two-month period, SWP informed defendants that neither Ceruti (as its designated witness) nor SWP's counsel was available—without providing alternative dates. And despite an extension, Ceruti failed to timely respond to defendants' document requests or the single interrogatory directed at her. Instead, pointing to her status as a pro se litigant and other pending litigation, Ceruti moved to stay the district-

---

[2] Before discovery, the defendants had unsuccessfully moved to dismiss the case under a doctrine that precludes certain lawsuits against bankruptcy trustees. That motion led to an interlocutory appeal, which was pending from December 2013 until August 2015.

court proceedings, a motion the district court denied.

Citing these difficulties with the scheduling order, the Rule 30(b)(6) deposition, and the document requests and interrogatory, as well as Ceruti's motion to stay, defendants moved to dismiss Ceruti's claims under Rule 41(b) for failing to participate in discovery in compliance with the Federal Rules of Civil Procedure. Weighing the relevant factors, the district court denied defendants' motion but observed that the circumstances of the case only "narrowly weigh[ed] against dismissal." Supp. App. vol. 7, 2053. Agreeing with defendants, the district court attributed "significant delays" in the case to Ceruti. *Id.* It noted that Ceruti's "failure to comply with deadlines, refusal or inability to attend hearings and schedule depositions, failure to respond to discovery requests, and repeated attempts to stay or delay the litigation" had burdened the judicial system and court staff while interfering "with the effective administration of justice." *Id.* The court explained that it had not "explicitly provided [Ceruti] with advance[] notice of the potential sanction of dismissal," but it added that its order should be understood to "provide[] such notice." *Id.* at 2053–54.

So the case continued, but matters did not improve. In the months that followed, defendants filed several motions to compel discovery. For instance, defendants' first attempt to conduct SWP's Rule 30(b)(6) deposition was marred by Ceruti's disruptive behavior, including verbose and nonresponsive answers to defendants' questioning, requiring defendants to continue the deposition and request judicial supervision. The district court granted the motion, explaining that given the "facts and history of this case," judicial supervision was "an appropriate remedy"; it ordered the magistrate judge

to supervise the deposition in person. Supp. App. vol. 9, 2556. Similar disruptive behavior occurred during Ceruti's personal deposition: Following a joint phone call from the parties during that deposition, the magistrate judge "encouraged [Ceruti] to answer counsel's questions to the best of her ability without being argumentative and warned that a failure to do so could result in sanctions." *Id.* at 2520.

A few weeks later, on its own initiative, the district court issued a show-cause order requiring the parties to explain why the action should not be "dismissed as a sanction due to misconduct." *Id.* at 2569. The district court was "troubled by the ongoing willful pattern of conduct that [had] delay[ed] and disrupt[ed] the litigation." *Id.* The court specifically called out Ceruti's conduct at SWP's Rule 30(b)(6) deposition and noted that its prior admonition—that the case could be dismissed as a sanction—had gone unheeded. The district court ordered briefing from the parties and, together with the magistrate judge, conducted a hearing on its show-cause order.

At that hearing, the district court and magistrate judge detailed plaintiffs' conduct during discovery, and the district court twice noted that it was "this close" to dismissing Ceruti from the case. App. vol. 13, 2920, 2945. The district court attributed much of the difficulty to Ceruti litigating the case pro se. Accordingly, the district court explained that Ceruti had six weeks to find an attorney, or else it would appoint Jared Bramwell (who was already representing SWP, Ceruti's company) to represent her. The district court added that it had not previously been assigned to "a case that has been this naggingly burdensome," *id.* at 2907, that this "case has got to become a normal case," and that the parties "have to cooperate," *id.* at 2951. The magistrate judge added that the parties'

6

conduct had to change, urging "[r]esponsiveness, cooperation, [and] meaningful meet and confer[s]." *Id.* at 2931. The magistrate judge emphasized that attempts "to resolve issues" with the court had to be "a last resort, not a first one." *Id*. Later, when Ceruti failed to obtain an attorney to represent her within the allotted time, the district court appointed Bramwell as her attorney.

After this hearing, the parties stipulated to an amended scheduling order. In the months that followed, defendants made supplemental discovery disclosures, including some documents that they disclosed only after plaintiffs obtained some of those same documents by third-party subpoena. Given the newly produced documents, defendants made Hofmann available for an additional deposition, so he could be questioned about the new documents. Additionally, ten days before the close of fact discovery, new attorneys entered appearances to represent plaintiffs, including Ceruti. Shortly after new counsel appeared, plaintiffs unilaterally canceled PKH's Rule 30(b)(6) deposition—which the parties had agreed to hold even though fact discovery had closed—after a dispute over the number of topics in the notice of deposition, as well as disagreements over the time permitted for the deposition.

Then, apparently because of what plaintiffs perceived as defendants' belated document disclosures, plaintiffs moved to strike defendants' answer and enter default judgment in their favor. Plaintiffs also moved to stay the case until their pending default motion was resolved, or alternatively, asked that the pending expert-discovery deadlines be extended.

The next day—the day of the deadline—plaintiffs submitted their expert disclosures. But the disclosures did not conform to the requirements of Federal Rule of Civil Procedure 26(a)(2)(B) because plaintiffs failed to include the actual expert reports. Rather, plaintiffs stated that they would only disclose expert reports after the district court ruled on their motion to strike defendants' answer or after the completion of fact discovery. What's more, one of plaintiffs' experts was retained only two days before the disclosure deadline. And that expert's retainer agreement expressly contemplated that no report would be submitted by the deadline.

The district court and the magistrate judge conducted a hearing on July 29, 2019, to address the pending motions. At the hearing, the district court remarked that this case has "a history that is uncommonly difficult, torture." Supp. App. vol. 12, 3378. And after reviewing the transcript and videotape of SWP's Rule 30(b)(6) deposition, the district court described the conduct of plaintiffs' new counsel as "one of the more troubling things to watch" and stated that the attorney was "obstructionist," "difficult," and "uncooperative in the extreme." *Id.* The magistrate judge echoed that sentiment. All of the pending motions were decided in defendants' favor, including their motion to strike plaintiffs' expert disclosures, which they filed shortly after this hearing.

Defendants then moved, under Rules 37 and 41, to dismiss the case—this time in its entirety—with prejudice as a sanction for plaintiffs' improper discovery conduct; they also moved for summary judgment on plaintiffs' remaining claims. After more than seven years of litigation over plaintiffs' claims, the district court granted both motions in a single written order, dismissing the case with prejudice. Plaintiffs appeal those

dispositive orders (Ceruti in Appeal No. 20-4040, and SWP in Appeal No. 20-4041), as well as several discovery rulings.[3]

## Analysis

We review involuntary dismissals under Rules 37(b)(2) and 41(b) for abuse of discretion. *See Olsen v. Mapes*, 333 F.3d 1199, 1204 (10th Cir. 2003) (reviewing dismissal under Rule 41(b) for failure to comply with rules and court orders); *Procter & Gamble Co. v. Haugen*, 427 F.3d 727, 738 (10th Cir. 2005) (reviewing dismissal under Rule 37 as discovery sanction). A district court abuses its discretion when it makes "a clear error of judgment or exceed[s] the bounds of permissible choice in the circumstances." *Ecclesiastes 9:10-11-12, Inc. v. LMC Holding Co.*, 497 F.3d 1135, 1143 (10th Cir. 2007) (alteration in original) (quoting *McEwen v. City of Norman*, 926 F.2d 1539, 1553–54 (10th Cir. 1991)). It is also an abuse of discretion to rely "upon clearly erroneous findings of fact." *Id.* A factual "finding is clearly erroneous if we are left with a definite and firm conviction that a mistake has been made." *Scalia v. Paragon Contractors Corp.*, 957 F.3d 1156, 1161 (10th Cir. 2020).

Under Rule 41(b), "a district court may dismiss an action with prejudice if the plaintiff fails 'to comply with [the Federal Rules of Civil Procedure] or any order of court.'" *Olsen*, 333 F.3d at 1204 (alteration in original) (quoting Fed. R. Civ. P. 41(b)). Under Rule 37(b)(2), a district court may sanction a party who "fails to obey an order to provide or permit discovery." *Procter & Gamble*, 427 F.3d at 737. Among "the available

---

[3] Defendants also cross-appeal (in Appeal No. 20-4045) the denial of the motion to dismiss that they filed earlier in the litigation.

sanctions" is an order "'dismissing the action or proceeding.'" *Id.* (quoting Fed. R. Civ. P. 37(b)(2)(A)(v)).

Before dismissing a case with prejudice as a sanction—whether under Rule 41 or 37—a district court should evaluate specific factors "on the record." *Ehrenhaus v. Reynolds*, 965 F.2d 916, 921 (10th Cir. 1992); *see also Ecclesiastes*, 497 F.3d at 1143–44 (applying these factors in Rule 41(b) dismissal). Those factors are: "(1) the degree of actual prejudice to the other party; (2) the amount of interference with the judicial process; (3) the litigant's culpability; (4) whether the court warned the party in advance that dismissal would be a likely sanction for noncompliance; and (5) the efficacy of lesser sanctions." *Ecclesiastes*, 497 F.3d at 1143. These factors are "not exhaustive, nor are the factors necessarily" of equal weight. *Procter & Gamble*, 427 F.3d at 738 (quoting *Chavez v. City of Albuquerque*, 402 F.3d 1039, 1044 (10th Cir. 2005)). Further, "[t]hese factors do not constitute a rigid test; rather, they represent criteria for the district court to consider prior to imposing dismissal as a sanction." *Ehrenhaus*, 965 F.2d at 921. "Only when the aggravating factors outweigh the judicial system's strong predisposition to resolve cases on their merits is dismissal an appropriate sanction." *Id.* (quoting *Meade v. Grubbs*, 841 F.2d 1512, 1521 n.7 (10th Cir. 1988)).

Plaintiffs concede that the district court applied the correct factors but challenge its conclusion as to each, arguing that the ultimate dismissal ruling was an abuse of discretion.[4] We accordingly review the district court's analysis of each factor, beginning

---

[4] Ceruti, proceeding pro se on appeal, incorporates SWP's brief, so we consider plaintiffs' arguments collectively.

10

with the degree of prejudice suffered by defendants. *See id*. The district court found this factor satisfied because plaintiffs' conduct unnecessarily delayed the litigation, caused defendants' legal fees to increase, and created uncertainty around defense strategy. Specifically, the district court highlighted plaintiffs' conduct related to the Rule 30(b)(6) depositions of both SWP and PKH, plaintiffs' unwillingness to work towards resolving discovery disputes rather than involving the court, plaintiffs' failure to produce timely and proper expert reports, and plaintiffs' failure to provide a damages calculation. On appeal, plaintiffs complain that defendants' belated production of documents went unpunished and assert various challenges to the district court's factual assessment of their conduct. But these challenges do not demonstrate that the district court's factual findings are clearly erroneous.

And critically, plaintiffs do not address the crux of the district court's reasoning as to the prejudice factor—that plaintiffs' conduct resulted in increased costs and delay and that the failure to comply with the expert-disclosure rules prejudiced defendants because it created uncertainty about how defendants would litigate the case. Indeed, consistent with the district court's conclusion, increased costs and delays are valid reasons to find actual prejudice. *See Jones v. Thompson*, 996 F.2d 261, 264 (10th Cir. 1993) ("Plaintiffs have prejudiced the [d]efendants by causing delay and mounting attorney[] fees."); *Auto-Owners Ins. Co. v. Summit Park Townhome Ass'n*, 886 F.3d 852, 860 (10th Cir. 2018) (concluding prejudice factor satisfied when defendant's violation of disclosure order wasted time and then "sparked months of litigation"). Accordingly, the district court did

not err in finding that defendants were prejudiced by plaintiffs' conduct on the basis of delays and increased costs.

Turning to the next factor—interference with the judicial process—the district court noted that in addition to the discovery issues highlighted above, plaintiffs had forced the court (and its staff) to handle their numerous extraneous filings, motions, and hearings. *See Ehrenhaus*, 965 F.2d at 921. The district court again highlighted plaintiffs' failure to provide timely expert reports, as well as their attempt to file such reports six weeks late, without permission, a deadline extension, or a showing of good cause, remarking that this course of action "effectively destroyed" the court's schedule for the case. App. vol. 12, 2557.

On appeal, plaintiffs contend that the district court's findings on this factor "focused principally and uniquely on Ceruti." SWP Br. 24. They also note that their expert reports were eventually produced with months to go before the scheduled trial date. Yet contrary to plaintiffs' contention, the district court's analysis did not focus solely on Ceruti's conduct. Indeed, the district court attributed the failure to provide timely expert reports without good cause to all plaintiffs, not just Ceruti.[5] Moreover, although plaintiffs suggest that their late expert reports did not interfere with the judicial process because the trial was still months away, the district court disagreed, stating that the "failures to comply with the . . . scheduling order would have delayed trial

---

[5] Further, in other parts of its dismissal order, the district court detailed additional conduct attributable to all plaintiffs, including their unwillingness to work towards resolving discovery disputes rather than involving the court, their conduct during the Rule 30(b)(6) depositions, and their failure to provide a damages calculation.

significantly." App. vol. 12, 2557. And plaintiffs' conclusory suggestion to the contrary does not render the district court's factual finding on this point clearly erroneous.

We have held that causing a district court to expend unnecessary resources can establish interference with the judicial process. *See Jones*, 996 F.2d at 265 (finding interference with judicial process when plaintiffs "repeatedly ignored court orders and thereby hindered the court's management of its docket and its efforts to avoid unnecessary burdens on the court and the opposing party"); *Auto-Owners Ins.*, 886 F.3d at 860 (finding this factor satisfied when there were "hundreds of wasted hours by [the opposing party], the court," and other entities involved in the case). Having found that both the unnecessary discovery motions and the untimely expert reports wasted judicial resources, the district court did not err in weighing this factor in favor of dismissal.

Next, the district court considered plaintiffs' culpability. *See Ehrenhaus*, 965 F.2d at 921. This factor requires "'willfulness, bad faith, or [some] fault' rather than just a simple 'inability to comply.'" *Lee v. Max Int'l, LLC*, 638 F.3d 1318, 1321 (10th Cir. 2011) (alteration in original) (quoting *Archibeque v. Atchison, Topeka & Santa Fe Ry.*, 70 F.3d 1172, 1174 (10th Cir. 1995)). "[W]illful" conduct stands in contrast to instances of "'involuntary noncompliance.'" *Sheftelman v. Standard Metals Corp.* (*In re Standard Metals Corp.*), 817 F.2d 625, 628–29 (10th Cir. 1987) (quoting *Patterson v. C. I. T. Corp.*, 352 F.2d 333, 336 (10th Cir. 1965)). The district court found plaintiffs were culpable because they: (1) unilaterally canceled PKH's 30(b)(6) deposition; (2) obstructed the taking of SWP's 30(b)(6) deposition; (3) moved to strike defendants' answer and seek default judgment rather than take the more moderate approach offered

13

by defendants; and (4) failed to provide timely expert reports and instead filed them six weeks late despite being denied an extension.

Plaintiffs argue that this factor is not met because they did not act willfully—rather, on plaintiffs' telling, the problems in this case (particularly with respect to their expert disclosures) stemmed from simple misunderstandings with defendants. We disagree. To illustrate the point, consider plaintiffs' approach to the expert reports. First, one of their experts was not retained until two days before the expert-disclosure deadline. Second, plaintiffs do not dispute that the expert's retainer agreement expressly contemplated seeking an extension and therefore missing the deadline for his report. And third, plaintiffs unilaterally refused to disclose their expert reports until the district court ruled on the motion to strike defendants' answer—essentially choosing to substitute their own judgment and preference for the district court's. Given these events, we agree with the district court's conclusion that plaintiffs "consciously chose" to submit the reports late and therefore acted willfully. App. vol. 12, 2558; *see also Sheftelman*, 817 F.2d at 628–29 (distinguishing "willful" and "intentional" conduct from involuntary failures to comply, such as failing to pay fine due to insolvency).

Moreover, even if we were to accept plaintiffs' explanation that their initial failure to timely produce their expert report stemmed from a misunderstanding with opposing counsel, that does not explain why over a month later they had still not produced their expert reports. Further, plaintiffs conceded at the July 29 motion hearing that the decision to cancel the Rule 30(b)(6) deposition, scheduled after the close of fact discovery, was "an error in hindsight." SWP Br. 22. Accordingly, plaintiffs' "protestations ring hollow."

14

*Ecclesiastes*, 497 F.3d at 1148. Their attempt to shift blame to defendants' purportedly belated discovery disclosures (which under the operative scheduling order were in fact timely) does not account for plaintiffs' own behavior or the fact that defendants offered a deposition for plaintiffs to inquire about the newly disclosed documents.[6]

What's more, plaintiffs fail to address several aspects of the district court's ruling, including their decision—after defendants supplemented their initial disclosures—to move to strike defendants' answer and seek default judgment, rather than working with defendants to arrange depositions to ask about the new documents. And they do not persuasively address counsel's and Ceruti's unprofessional conduct at SWP's and PKH's Rule 30(b)(6) depositions.[7] *Cf. Ecclesiastes*, 497 F.3d at 1148–49 (concluding that disruptive conduct related to scheduling depositions satisfied culpability factor). In short, we conclude the district court did not err in weighing this factor in favor of dismissal.

As for the next factor—whether the court warned the plaintiffs in advance that dismissal would be a likely sanction for noncompliance—plaintiffs concede the district court warned that dismissal was possible. *See Ehrenhaus*, 965 F.2d at 921. In particular,

---

[6] Plaintiffs cite *Toma v. City of Weatherford*, 846 F.2d 58 (10th Cir. 1988), to support their contention that their missteps were involuntary. But their conduct is unlike the plaintiff's behavior in *Toma*, which amounted to "some laxity and inattentiveness to filing deadlines." *Toma*, 846 F.3d at 61. Moreover, in *Toma*, the suit had been pending for only seven months at the time of dismissal. *Id.* Here, by stark contrast, plaintiffs' claims had been pending for over seven years.

[7] Plaintiffs also complain that they should not be punished for disagreements between opposing attorneys. That argument is unavailing. In the involuntary-dismissal context, we have explained that there is "'nothing novel' about holding clients responsible for the conduct of their attorneys, even conduct they did not know about." *Ecclesiastes*, 497 F.3d at 1145 n.12 (quoting *Gripe v. City of Enid*, 312 F.3d 1184, 1189 (10th Cir. 2002)).

15

when denying defendants' initial motion to dismiss Ceruti's claims, the district court provided her with clear notice. And the district court's later show-cause order required "[e]ach party" to separately "show cause why this action should not be dismissed." Supp. App. vol. 9, 2570. Such direction effectively warned all plaintiffs that dismissal was a possibility. *See Ecclesiastes*, 497 F.3d at 1150 (explaining that "notice (1) without an express warning and (2) objectively based upon the totality of the circumstances (most importantly, the trial court's actions or words)" is "deemed to be sufficient"); *Ehrenhaus*, 965 F.2d at 921 (finding notice factor satisfied by district court's invitation to defendant to move to dismiss case if plaintiff failed to attend deposition). Plaintiffs contend, however, that there was no "'noncompliance' meriting the harsh sanction of dismissal." SWP Br. 28. But as we have detailed, plaintiffs' conduct did not change, even after the district court's warnings. Accordingly, the district court did not err in weighing this factor in favor of dismissal as well.

With respect to the final factor—the efficacy of lesser sanctions—plaintiffs argue that the district court failed to consider less severe alternatives. *See Ehrenhaus*, 965 F.2d at 921. In weighing this factor, the district court explained that plaintiffs' actions were "willful and deliberate" and that their disruptive conduct in the case had "not abated despite prior orders, warnings, multiple hearings, and admonitions." App. vol. 12, 2559. All of this led the district court—which, along with the magistrate judge, observed plaintiffs' conduct in this case firsthand—to conclude that anything short of "dismissal would be ineffective." *Id.* Plaintiffs offer no meaningful reason to doubt the district court's conclusion.

16

In sum, it is true that "dismissal is a severe sanction and is not ordinarily warranted if lesser sanctions would be effective." *Jones*, 996 F.2d at 265. Yet after careful review of the district court's order and the relevant portions of the voluminous record, we conclude that the district court "thoroughly considered and properly applied" the relevant factors. *Ecclesiastes*, 497 F.3d at 1151. The record "shows [plaintiffs] flouted numerous court orders . . . and abused the discovery process." *Jones*, 996 F.2d at 266. And notably, the district court narrowly denied an earlier motion to dismiss Ceruti's claims and warned that failure to correct course could lead to dismissal; it then also issued its own show-cause order directing the parties to explain why the case should not be dismissed after no course correction took place. The district court's decision to ultimately follow through on its warnings is not an abuse of discretion under these circumstances.

Moreover, that Ceruti at times proceeded pro se in this litigation does not help her here. The district court repeatedly urged Ceruti to obtain counsel and finally appointed SWP's attorney to represent her after she failed to retain one. That Ceruti "did not have [the] benefit of counsel at various times was a problem of [her] own making." *Id.* And although we take a solicitous approach to pro se litigants, we have repeatedly "insisted that pro se parties follow the same rules of procedure that govern other litigants." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (quoting *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994)).

For all of these reasons, we conclude that the district court did not display a clear error of judgment or exceed the bounds of permissible choice under these circumstances.

17

Accordingly, we conclude the district court did not abuse its discretion in dismissing this action.[8]

## Conclusion

Finding no abuse of discretion in the district court's careful analysis, we affirm its order dismissing the complaint under Rules 37(b)(2)(A)(v) and 41(b).

Entered for the Court

Nancy L. Moritz
Circuit Judge

---

[8] Because we affirm the district court's dismissal order, we do not address the summary-judgment order or any of the nondispositive issues that plaintiffs, including Ceruti, pursue on appeal. And given this disposition, we do not reach defendants' cross-appeal. *See Meyerhoff v. Michelin Tire Corp.*, 70 F.3d 1175, 1184 n.6 (10th Cir. 1995) (declining to reach merits of pending cross-appeal). As a final matter, we decline to consider the exhibits Ceruti submitted with her briefs on appeal, many of which were not presented in the district court. *See United States v. Kennedy*, 225 F.3d 1187, 1191 (10th Cir. 2000) (explaining that we "will not consider material outside the record before the district court" except in rare circumstances).