**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 14, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

FRANCIS YOMI,

    Plaintiff - Appellant,

v.

XAVIER BECERRA, in his capacity as
Secretary of U.S. Department of Health
and Human Services,

    Defendant - Appellee.

No. 23-3003
(D.C. No. 2:21-CV-02224-DDC-ADM)
(D. Kan.)

_____

## ORDER AND JUDGMENT[*]
_____

Before **EID**, **CARSON**, and **ROSSMAN**, Circuit Judges.
_____

Francis Yomi appeals the district court's dismissal of his employment discrimination lawsuit as a sanction for discovery misconduct. He also appeals various other orders, but those issues are moot if we affirm the dismissal sanction. We have jurisdiction under 28 U.S.C. § 1291 and we hold that the district court's

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. _See_ Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

dismissal sanction was not an abuse of discretion.  We therefore affirm the dismissal, and we do not reach the other orders Mr. Yomi challenges.

## I.    BACKGROUND & PROCEDURAL HISTORY

### A.    Beginning of the Lawsuit and Early Discovery Disputes

Mr. Yomi previously worked in a Kansas field office of the Food and Drug Administration (part of the Department of Health and Human Services).  After that employment ended, he moved to Maryland.  In May 2021, however, he filed a pro se employment discrimination lawsuit in the United States District Court for the District of Kansas, alleging his former employer discriminated against him on the basis of race (African American), national origin (Cameroon), and sex (male).  He also filed a motion to proceed in forma pauperis (IFP), which a magistrate judge denied without prejudice because the relevant information about Mr. Yomi's financial status was illegible.

Instead of filing a new IFP motion, Mr. Yomi filed a Federal Rule of Civil Procedure 72(a) objection,[1] with legible financial information attached.  The district court overruled the objection but directed the court clerk to re-docket the objection as a renewed IFP motion.  Mr. Yomi then moved for reconsideration, arguing his Rule 72(a) objection had really been, from the start, a renewed IFP motion, and the district court should not have said anything about it before receiving the magistrate judge's

---

[1] Throughout the record, the parties and the district court usually refer to Rule 72(a) and 72(b) objections as "motions for review."  In this order and judgment, we will use the more common terminology.

2

ruling. The district court denied the motion as baseless and pointed out that the magistrate judge had, in the meantime, already granted the as-construed renewed motion.

Following motion practice over whether Mr. Yomi had named the proper party, and whether he could submit a "reply" to the government's answer to his complaint, discovery began in early December 2001. Soon after, the government moved for entry of the District of Kansas's standard protective order, because Mr. Yomi would not agree to any protective order. The magistrate judge granted that motion. Mr. Yomi filed a Rule 72(a) objection, which the district court overruled.

Also, despite Mr. Yomi's claims that the alleged employment discrimination led to numerous health problems, Mr. Yomi would not agree to a standard release giving the government permission to obtain his protected health information directly from his healthcare providers (as opposed to Mr. Yomi himself producing the health records he deemed relevant). The government therefore moved for an order to that effect, which the magistrate judge granted. Mr. Yomi filed a Rule 72(a) objection, which the district court overruled.

## B.     Scheduling Mr. Yomi's Deposition

On December 30, 2021, the government e-mailed Mr. Yomi to schedule his deposition. The government said it planned to depose Mr. Yomi in Kansas because: (1) it is a general rule that plaintiffs must make themselves available to be deposed in the state where they filed suit; and (2) about a week earlier, Mr. Yomi had informed the court he needed more time to answer certain discovery requests because he

planned to travel to Kansas to retrieve relevant medical records.[2]  The government therefore proposed coordinating Mr. Yomi's deposition with the trip he already intended to make.

Mr. Yomi replied, "[Y]ou wrote as if you know for sure that I haven't yet gone there to get my medical records, whereas in fact you do not know if I went there or not."  R. vol. I at 162.  Without revealing whether he had, in fact, already traveled to Kansas, he went on to say he did not have enough money or time to come.  He also asserted his belief that the Federal Rules of Civil Procedure did not allow the government to depose him more than 100 miles from his residence.  "So," he concluded, "I will not come [to] Kansas for helping you in your deposition . . . ."  *Id.* But he said the deposition could happen on March 11, 2022, in Maryland.

The government soon noticed Mr. Yomi's deposition for March 11 in Kansas City, Kansas.  Mr. Yomi responded with a motion that his deposition be located no more than fifty miles from his home in Maryland.  He told the court he did not have enough money to come to Kansas, and, "even if I had enough money, I would not still have come [to] Kansas to be deposed, since I have my own depositions to take, in which Defendant's witnesses will be deposed, and I would have spent that money for those depositions instead."  *Id.* at 106.  He further asserted his belief that the Federal Rules of Civil Procedure at least protected him from having to travel more than 100 miles for his deposition.

---

[2] Mr. Yomi could not remember the names or addresses of the relevant medical providers, but he was confident he could find their offices if he were there in person.

While this motion was pending, Mr. Yomi separately moved to postpone his deposition by forty-five days because he wanted to see the government's responses to outstanding requests for production of documents before he sat for his deposition. He did not explain why he first needed to see the government's responses, other than saying it was his "own discovery strategy." *Id.* at 176.

The district court referred Mr. Yomi's motions to the magistrate judge, who construed them as motions for protective orders. As to the deposition location, the magistrate judge agreed with the government that Mr. Yomi was presumptively required to make himself available in Kansas for a deposition. The magistrate judge further found Mr. Yomi had not demonstrated good cause for an exception because: (1) he had made only general statements about lack of money, as opposed to submitting an affidavit or details about his finances; and (2) he intended to travel to Kansas anyway to obtain documents. The magistrate judge additionally discussed the significance of Mr. Yomi's IFP status: "[I]t's likely that, in many situations, an indigent plaintiff can make a particular and specific demonstration of fact that the burden of traveling for his or her deposition would be undue. Plaintiff here simply has not met that burden." *Id.* at 195 (footnote and internal quotation marks omitted).

As to the request for a 45-day extension, the magistrate judge found that Mr. Yomi's alleged discovery strategy was not good cause to postpone his deposition. The magistrate judge further opined that allowing the extension "would invite further delays and motion practice in this already slow-moving case." *Id.* at 200.

5

Mr. Yomi informed the government he planned to file Rule 72(a) objections to both of the magistrate judge's rulings. To accommodate this, the government filed an amended deposition notice, pushing the deposition back to April 8, 2022, still in Kansas City. Mr. Yomi then filed his Rule 72(a) objections.

By order dated April 13, the district court refused to overturn the magistrate judge's rulings.[3] The district court also warned Mr. Yomi about his overuse of objections and motions for reconsideration. "Indeed," the district court said, "plaintiff has turned this case into . . . something of a hydra: every time the court rules [on] a motion, three more appear in its place." *Id.* at 236–37. The court cautioned Mr. Yomi that his "litigation strategy, if it continues, may warrant some kind of filing restrictions or perhaps sanctions." *Id.* at 237.

The next day, the government e-mailed Mr. Yomi to coordinate a new deposition date. Mr. Yomi replied that he would not discuss a new deposition date until the government produced documents he had requested. The government then noticed his deposition for May 13, 2022, in Kansas City. Mr. Yomi responded by filing an objection to the deposition notice. This document repeated at length his arguments that he should not be required to go to Kansas for his deposition, including continued argument that the magistrate judge's ruling was wrong. Mr. Yomi further

---

[3] Obviously, April 13 is after April 8. The government does not claim it showed up at the deposition location on April 8, expecting Mr. Yomi to be there. It appears the government considered the deposition stayed pending the objections.

6

stated, "[T]he Court did not order me to go [to] Kansas, but it simply denied my motion, and that does not mean that it ordered me to go [to] Kansas." *Id.* at 397.

The magistrate judge held a status conference on May 12, one day before the scheduled deposition. Much of this status conference revolved around ongoing disputes over written discovery (discussed further below). However, the magistrate judge noted that objections Mr. Yomi had filed on the docket, including his objection to the most recent deposition notice, "[are] not motions. They don't require any action by the court. . . . They're just effectively nothing on the docket sheet." Supp. R. vol. III at 6.

Later that same morning, the government e-mailed Mr. Yomi, emphasizing the magistrate judge's statement that his objection to the deposition notice had no legal effect. Thus, the government could insist on going forward with Mr. Yomi's deposition scheduled for the next day. But, "[i]n fairness," it offered to push the deposition out to June, "to give [Mr. Yomi] an opportunity to make travel arrangements." R. vol. III at 156. Mr. Yomi responded that he would not come to Kansas. He instead told the government that it would need to file a motion to compel or serve a subpoena, at which point he would respond with an affidavit of financial hardship. "I will not file any motion about this," he added, "whether a protective order or not. This time, you [will] file one, if you want to." *Id.* The government filed a new deposition notice for June 10, 2022, in Kansas City.

### C. Written Discovery

As the deposition dispute was playing out, the parties were also litigating over the adequacy of their responses to written discovery, especially production of documents. Both sides filed motions to compel. Briefing closed on the government's motion in late April 2022. Briefing on Mr. Yomi's motion was scheduled to conclude (with Mr. Yomi's reply) in late May. On May 18, however, Mr. Yomi e-mailed the magistrate judge's chambers announcing he had been in a car accident the day before, and requesting an indefinite stay. The magistrate judge entered an order extending his motion-to-compel reply deadline by two weeks, but further stating that "the court will not consider an indefinite stay without a formal motion . . . accompanied by evidence that supports the specific relief he seeks." R. vol. III at 71. The magistrate judge also advised that any medical paperwork submitted in support of a motion "must include letter(s) by one or more of his treating physicians that provides sufficient detail to explain the specific limitations that prevent [him] from fully participating in this lawsuit and the anticipated duration (to the extent it can be estimated) of any such limitations." *Id.*

On May 27, the magistrate judge entered an order granting the government's motion to compel in part. The magistrate judge set a compliance deadline of June 10, and stated "this production date is firm," in part because "the court has already factored in Yomi's informal request to stay the activities in this case because he was recently injured in a car accident" and "Yomi's discovery responses have remained

8

deficient for too long." *Id.* at 86 & n.7.[4]  The magistrate judge warned that failure to comply could lead to involuntary dismissal.  The magistrate judge also noted Mr. Yomi's "steadfast[] refus[al] to appear for a deposition" as an example of "intransigence" that the court would not allow to continue.  *Id.* at 86–87.

### D.    June 9 & 10

On June 9, Mr. Yomi filed an objection to the government's notice setting the deposition for June 10.  He noted the magistrate judge's order in response to his e-mail about the car accident, in which the magistrate judge granted an extension of Mr. Yomi's deadline to file a reply in support of his motion to compel.  Mr. Yomi claimed the magistrate judge

> made a mistake, since [she] may have thought that [the motion to compel] was the only thing to which I had to file something on, whereas there are many other things, such as, but not limited to, this current Objection.  It should be construed that the Court granted me a Stay on everything I was supposed to submit, since it would make no sense that, because of the car accident, it grants me the stay on some few things (future submissions), and denies me the stay on some other things (some future submissions).

R. vol. III at 91.  Mr. Yomi then criticized the magistrate judge's order regarding the location of his deposition, quoting verbatim from his since-overruled Rule 72(a) objection to that order.  He added that he was in pain from the car accident and he could not afford a $1,200 trip (his estimate of what it would cost to travel to Kansas

---

[4] The government had first served the relevant requests in December 2021.

City and back) because he currently did not have a job and was more than $76,000 in debt.

On June 10, the government arrived for Mr. Yomi's deposition at the designated place in Kansas City. After waiting for a half-hour, counsel for the government went on record with the court reporter to note Mr. Yomi's nonappearance, and then ended the deposition.

June 10 was also the court-ordered deadline for producing discovery responses, but Mr. Yomi produce none. That night, however, he filed a motion seeking a 90-day stay of all proceedings. Mr. Yomi argued that the injuries he sustained in the car accident made it very difficult for him to continue. Four days later, the magistrate judge denied the motion without prejudice because Mr. Yomi had not submitted anything from a physician stating his limitations and their expected duration.

### E.    The Government's Motion for Sanctions and Related Proceedings

On July 7, 2022, the government moved for dismissal as a sanction against Mr. Yomi for failing to attend his deposition and produce discovery responses on June 10.

On July 11, Mr. Yomi submitted a motion to stay, retroactive to the day of his car accident (May 17). The magistrate judge denied the motion the next day because, although Mr. Yomi submitted a letter from a physician, the letter stated only that Mr. Yomi was restricted from pushing or pulling more than five pounds and standing

or walking more than thirty minutes.  The magistrate acknowledged Mr. Yomi's claim

> that typing causes him pain, that walking to the library or FedEx for activities related to this lawsuit makes the pain worse, and that physical therapy will consume a lot of his time.  But Yomi's lengthy and voluminous filings since the accident belie that he is impaired from being able to participate in this lawsuit.  To the contrary, Yomi filed 6 pages of single-spaced objections to Defendant's [notice setting the deposition for June 10]; a 3-page, single-spaced motion to stay with exhibits; and the current 6-page, single-spaced renewed motion to stay.  And this does not even account for the lengthy emails that Yomi routinely sends to the undersigned magistrate judge's chambers and opposing counsel that are not currently in the public record.

R. vol. III at 177–78 (citations omitted).

In August 2022, the magistrate judge issued a recommendation to grant the government's motion to dismiss as a sanction.  The magistrate judge invoked three bases:

- failure to comply with a court order, *see* Fed. R. Civ. P. 41(b), specifically, the May 27 order to provide written discovery by June 10;

- failure to comply with an order permitting discovery, *see* Fed. R. Civ. P. 37(b)(2)(A)(v), again referring to the May 27 order; and

- failure to appear at a deposition after proper notice, *see* Fed. R. Civ. P. 37(d)(1)(A)(i).

Mr. Yomi filed a Rule 72(b) objection. In December 2022, the district court reviewed the issues de novo, overruled Mr. Yomi's objection, adopted the magistrate judge's recommendation in full, and dismissed the case.

## II.    MOTIONS TO RECUSE

Mr. Yomi has filed motions to recuse the magistrate judge and the district judge. He claims they are both discriminating against him (based on his race and national origin), conspiring with the government to end his lawsuit, and retaliating against him because he filed judicial misconduct claims against them while the sanctions motion was pending.

We liberally construe these motions as motions to reassign the district judge and magistrate judge on remand. *See Ute Indian Tribe of the Uintah & Ouray Reservation v. Lawrence*, 22 F.4th 892, 911 (10th Cir.) (evaluating a reassignment request brought by way of motion), *cert. denied sub nom. Becker v. Ute Indian Tribe of the Uintah & Ouray Reservation*, 143 S. Ct. 273 (2022); *see also James v. Wadas*, 724 F.3d 1312, 1315 (10th Cir. 2013) ("Because [the appellant] is pro se, we liberally construe his filings, but we will not act as his advocate."). Technically speaking, these motions are moot if we affirm the sanctions order (because there would be no remand). Nonetheless, we understand these motions as part of Mr. Yomi's larger argument that the sanctions order was improper. In that light, we will address them first.

Mr. Yomi's dispute with the district judge and magistrate judge arises from the rulings they made against him, but "adverse rulings cannot in themselves form the

12

appropriate grounds for disqualification," *Green v. Branson*, 108 F.3d 1296, 1305 (10th Cir. 1997) (internal quotation marks omitted).  Mr. Yomi believes he has overcome this barrier because the district court's rulings were, in his view, perpetually and egregiously wrong, especially when he did not receive a stay in light of his car accident.  But Mr. Yomi's subjective views about the quality of the district court's decisions are not relevant.  Moreover, our review of the record shows the district court seriously considered each of Mr. Yomi's motions and his responses to the government's motions, and the court always issued thoughtful explanatory orders. There is no hint of bias or retaliation.

For all these reasons, we deny Mr. Yomi's motions to recuse the district judge and magistrate judge.

## III.    ANALYSIS

### A.    The *Ehrenhaus* Standard

When deciding whether to dismiss Mr. Yomi's action as a discovery sanction, the district court considered the five factors it "should ordinarily consider." *Ehrenhaus v. Reynolds*, 965 F.2d 916, 922 (10th Cir. 1992).  Those five factors are:

1.    the degree of actual prejudice to the defendant;

2.    the amount of interference with the judicial process;

3.    the culpability of the litigant;

4.    whether the court warned the parties in advance that dismissal would be a likely sanction for noncompliance; and

5.    the efficacy of lesser sanctions.

*Id.* at 921.

### B.    Mr. Yomi's Arguments

Mr. Yomi's appellate briefs do not discuss the *Ehrenhaus* factors or the district court's weighing of them.  Rather, he claims his objection to the June 10 deposition (which he filed on June 9), and his motion to stay all proceedings (filed on the evening of June 10), "nullified any and all Federal and Local Rules that could have sanctioned me for what both Judges and [opposing counsel] called disobedience of the Court's Order."  Aplt. Opening Br. at 3.  In other words, Mr. Yomi attacks the premise underlying the sanctions order, *i.e.*, that he disobeyed a court order or failed to attend a duly noticed deposition.  Mr. Yomi is incorrect.

As to his June 9 objection to the June 10 deposition, the magistrate judge had already warned Mr. Yomi that such objections have no legal effect.  Indeed, there is no provision in the Federal Rules of Civil Procedure for an objection to a deposition notice, much less an objection that has self-executing effect to stay the deposition.  As for Mr. Yomi's claim that the government would need to move to compel him to attend, the government had no such duty.  *See Robison v. Transamerica Ins. Co.*, 368 F.2d 37, 39 (10th Cir. 1966) ("The sanctions under [Rule 37(d)] apply without regard to whether the court has ordered the delinquent party to appear for his deposition . . . ." (internal quotation marks omitted)).

Concerning Mr. Yomi's motion to stay filed on the evening of June 10, this could not have had any effect on his failure to attend his deposition at 9:00 that morning.  Nor was the motion the equivalent of an extension of time to comply with

his written discovery obligations because extensions of time are not "a matter of right."  4B Charles Alan Wright et al., *Federal Practice and Procedure* § 1165 text accompanying n.15 (4th ed., Westlaw Apr. 2023 update).

Mr. Yomi also invokes Rule 37(d)(2), which says, "A failure described in Rule 37(d)(1)(A) [such as failing to attend a duly noticed deposition] is not excused on the ground that the discovery sought was objectionable, unless the party failing to act has a pending motion for a protective order under Rule 26(c)."  Mr. Yomi appears to believe his May 18 e-mail to the magistrate judge (announcing his car accident), his June 9 objection to the deposition, and his June 10 motion to stay triggered this rule. Again, he is incorrect.

The May 18 e-mail obviously was not a motion, much less a motion for a protective order.  Further, the magistrate judge warned Mr. Yomi that the court would not take any action beyond extending a reply-brief deadline without a formal motion.

The June 9 objection was not presented as a motion for a protective order. To the extent it could have been construed as one, the court had already denied a protective order on the grounds asserted (which were the same grounds asserted in Mr. Yomi's motion to limit his deposition to within fifty miles of his residence).

Likewise, the June 10 motion to stay was not presented as a motion for a protective order.  Rather, it was a request to pause proceedings in light of Mr. Yomi's injuries.  Nothing in the motion implied that the written discovery at issue "was

objectionable." Fed. R. Civ. P. 37(d)(2). Moreover, the court had already overruled his objections to the discovery in question.

Thus, as of June 11, Mr. Yomi was in violation of his obligation to attend his deposition and to respond to the government's discovery requests. His filings on June 9 and 10 did not prevent that.

Mr. Yomi also appears to reassert his claim that the Federal Rules of Civil Procedure protected him from attending a deposition more than 100 miles from his home, so he was justified in refusing to attend. But the district court had already rejected this argument, and "an order issued by a court with jurisdiction over the subject matter and person must be obeyed by the parties until it is reversed by orderly and proper proceedings," *United States v. United Mine Workers of Am.*, 330 U.S. 258, 293 (1947). Indeed, a party who "mak[es] their private determination of the law, act[s] at their peril." *Id.*[5]

Next, Mr. Yomi appears to assert that the injuries from his car accident justified a stay, so we should review his case as if a stay had been in place. Again, this is an attempt to reargue the merits of the issues underlying his disobedience. In

---

[5] To be clear, we see no error in the district court's rejection of Mr. Yomi's 100-miles argument. Rule 45(c)(1) says, among other things, that a *subpoena* may command attendance at a deposition within 100 miles of the subpoenaed person's residence, or, if they are a party, within the state where they reside. But "[d]epositions of parties . . . need not involve use of a subpoena," and a district court may impose Rule 37 sanctions if a party fails to appear for a properly noticed deposition "without regard to service of a subpoena and without regard to the geographical limitations on compliance with a subpoena." Fed. R. Civ. P. 45 advisory committee's note to 2013 amendment.

16

any event, the district court was within its discretion to conclude that Mr. Yomi submitted no evidence of relevant limitations, and that his continued output of lengthy filings following his car accident showed he remained capable of participating in the lawsuit.

Finally, Mr. Yomi points to Rule 37(d)(1)(B), which says, "A motion for sanctions for failing to answer or respond [to a written discovery request] must include a certification that the movant has in good faith conferred or attempted to confer with the party failing to act in an effort to obtain the answer or response without court action." Mr. Yomi argues the government never conferred with him and never included such a certification when it moved for the dismissal sanction. As to the certification, the government indeed included one. *See* R. vol. III at 142. As to actual failure to confer, Mr. Yomi appears to be saying the government did not confer between June 10 and July 7 (when it filed the sanctions motion). We will assume this to be true. Even so, the rule does not specify a timeframe in which conferral efforts must take place, and the record amply demonstrates the government's attempt to resolve the written discovery dispute informally. We see no basis to overturn the dismissal sanction on this account.

## C.    Applying the *Ehrenhaus* Factors

We cannot discern any other arguments in Mr. Yomi's briefing that may be relevant to the sanctions order. In the interest of justice, we will nonetheless review the district court's sanctions order for abuse of discretion. *See Lee v. Max Int'l, LLC*, 638 F.3d 1318, 1323 (10th Cir. 2011) ("[W]e will uphold a district court's sanctions

17

order of dismissal . . . so long as our independent review of the record confirms that the district court didn't abuse its discretion."). We structure our review around the district court's application of the five *Ehrenhaus* factors, quoted previously.

First, the district court permissibly found actual prejudice to the government because it could not prepare an adequate defense without a deposition and written discovery. In theory, Mr. Yomi might have eventually cooperated with the government's discovery efforts, thus eliminating this prejudice. But, as we will discuss more thoroughly in the context of possible lesser sanctions, the district court properly found there was no reasonable expectation Mr. Yomi would ever fully comply.

Second, the district court had an adequate basis to conclude that Mr. Yomi's conduct severely interfered with the judicial process. Mr. Yomi's evasion of deposition and discovery obligations severely hindered the progress of the case. He accomplished much of this delay through, in the district court's words, "persistent abuse of motion practice that far exceeds the norms of reasonable and diligent litigation." R. vol. III at 365–66. Indeed, Mr. Yomi's opening merits brief unintentionally highlights the problem: "I believe the District Court has made wrong decisions on any and all its rulings on the *about 43 motions filed in the District Court so far*, except on [certain] unopposed motion[s]." Aplt. Opening Br. at 2 (emphasis added). Mr. Yomi's case was only about nineteen months old when the district court dismissed it.

Third, we see no basis to disturb the district court's finding that Mr. Yomi was personally culpable for his behavior. We understand he suffered some injuries in the car accident, but, as already discussed, he failed to submit evidence to the district court that he was suffering limitations that affected his ability to participate in the case. Moreover, Mr. Yomi was already demonstrating obstructive behavior before the accident. As the district court observed, "Plaintiff's intransigence predate[d] his injury by months." R. vol. III at 368.

Fourth, the magistrate judge warned Mr. Yomi that failure to comply with his written discovery obligations by June 10 could lead to dismissal. Neither the district judge nor the magistrate judge explicitly warned Mr. Yomi that failure to attend his June 10 deposition could lead to the same result. However, in the same order in which the magistrate judge warned Mr. Yomi of the potential consequences of failing to answer written discovery by June 10, the magistrate judge also said Mr. Yomi's opposition to attending his deposition in Kansas was an example of intransigence that the court would not allow to continue.

Finally, the district court was within its discretion to determine that lesser sanctions would have no effect. Mr. Yomi amply demonstrated his willingness to ignore court orders, and sometimes to justify himself by unilaterally reinterpreting those orders to suit his needs. Moreover, he demonstrated an attitude (also reflected in his appellate filings) that he cannot be wrong, and anyone who opposes or rules against him must be biased, racist, and part of a conspiracy to suppress what he views as irrefutably meritorious claims.

In light of all this, the district court acted within its discretion to dismiss Mr. Yomi's case as a sanction for his refusal to comply with court orders and discovery obligations.[6]

## IV.    CONCLUSION

We affirm the district court's judgment.  We deny Mr. Yomi's motions to recuse.  We grant his motion to supplement the record on appeal and we direct the clerk to create an appellant's supplemental record containing the fourteen district court documents listed in Mr. Yomi's motion.  This includes district court ECF No. 223, which already exists in volume IV of the current record, but is sealed because it contains information about Mr. Yomi's health following his car accident.

---

[6] When the district court dismissed the case, it also denied two pending Rule 72(a) objections as moot.  One was an objection to the magistrate judge's denial of Mr. Yomi's July 11 motion to stay (the motion that included the doctor's letter stating Mr. Yomi could not push or pull more than five pounds and could not stand or walk more than thirty minutes).  The other was an objection to an order striking an unauthorized surreply.  Mr. Yomi argues the district court should have ruled on these objections first, before ruling on the dismissal recommendation, because they were "part of [his] arguments responding [to] or addressing [the government's] motion to sanction."  Aplt. Opening Br. at 14.  But Mr. Yomi had a full opportunity to object directly to the magistrate judge's dismissal recommendation.  Indeed, he filed a Rule 72(b) objection comprising twenty-eight pages of single-spaced small type.  *See* R. vol. III at 306–33.  He gives us no authority for the notion that the district court had a duty to look at all of his other outstanding filings to understand his Rule 72(b) objection.  We therefore reject this argument.

Mr. Yomi asks us to unseal ECF No. 223 and we see no reason to deny that request, given that it is his own health information.

Entered for the Court

Joel M. Carson III
Circuit Judge